UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Catherine Leonie NANTUME,<br><br>       Petitioner,<br>v.<br><br>JEFFERSON B. SESSIONS,<br>Attorney General<br>KIRSTJEN M. NIELSEN;<br>Secretary of Homeland Security<br>CHRISTOPHER CRONEN,<br>Immigration and Customs Enforcement,<br>Boston Field Office Director,<br>YOLANDA SMITH,<br>Superintendent (i.e. Warden) of Suffolk County<br>House of Correction,<br><br>       Respondents. | Civil Action No:<br><br>**PETITION FOR WRIT OF**<br>**HABEAS CORPUS UNDER**<br>**28 U.S.C. § 2241**<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

**PETITION FOR A WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2241**

Petitioner, Catherine Leonie Nantume, hereby petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention by Respondents. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

1. Petitioner requests the Court to issue an Order to Show Cause that requires the government to respond in three days because the Petitioner is being detained unconstitutionally.

**CUSTODY**

2. Petitioner is in the physical custody of Respondents and U.S. Immigration and Customs Enforcement ("ICE"). Petitioner is detained at the Suffolk County House of Correction in

1

Boston, Massachusetts. ICE has contracted with the Suffolk County House of Correction to house immigration detainees such as Petitioner. Petitioner is under the direct control of the Respondents and their agents.

## JURISDICTION

3. This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et. seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq.

4. This Court has jurisdiction under 28 U.S.C. § 2241; art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"); and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 701, and the All Writs Act, 28 U.S.C. § 1651.

5. Petitioner has exhausted any and all administrative remedies to the extent required by law.

6. The Supreme Court held that § 2241 habeas corpus proceedings provide a forum for statutory and constitutional challenges to post-removal detention. See Zadvydas v. Davis, 533 U.S. 678 (2001).

## VENUE

7. Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the district of Massachusetts, the judicial district in which Petitioner resides.

## PARTIES

8. Petitioner is a native and citizen of Uganda. Petitioner was first taken into ICE custody in July of 2013. She was released in December of 2014, and has remained "stateless," as her government would not issue her a travel document. On May 31, 2018, ICE took Petitioner into custody even though her country had still not issued her a travel document. Petitioner is a lesbian and her life or freedom would be threatened if removed to Uganda.

9. Respondent Jefferson B. Sessions ("SESSIONS") is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration & Nationality Act (INA). As such, SESSIONS has ultimate custodial authority over Petitioner.

10. Respondent Kirstjen M. Nielsen ("NIELSEN") is the United States Secretary of Homeland Security, whose headquarters are located at 500 West 12th Street SW, Washington, District of Colombia. ICE, the agency responsible for detaining and removing aliens under U.S. immigration law, is a branch of the Department of Homeland Security. Accordingly, NIELSEN has legal custody of the Petitioner. NIELSEN routinely transacts business in the District of Massachusetts. She is sued in her official capacity.

11. Respondent Thomas Homan ("HOMAN") is the Acting Director of ICE, whose headquarters are located at 500 12th Street SW, Washington, District of Colombia. ICE is the branch of DHS responsible for detaining and removing aliens under U.S. immigration law. Therefore, HOMAN has legal custody of the Petitioner. HOMAN routinely transacts business in the District of Massachusetts. He is sued in his official capacity.

12. Respondent Christopher Cronen ("CRONEN") is the Field Office Director for the Boston Field Office of ICE ERO. ICE ERO is the agency that oversees the detention of aliens within the area covered by the Boston Field Office, located at 1000 District Avenue,

Burlington, Massachusetts. The Boston Field Office's area of responsibility includes Boston, Massachusetts, where Ms. Nantume is detained. Accordingly, CRONEN has legal custody of Ms. Nantume. CRONEN is sued in his official capacity.

13. Respondent Steven W. Tompkins is the Sheriff of the Suffolk County Detention Center, where Petitioner is currently detained under the authority of ICE, alternatively may be considered to be Petitioner's immediate custodian.

14. Respondent Yolanda Smith ("SMITH") is the superintendent (i.e., warden) of Suffolk County House of Correction, located at 20 Bradston Street in Boston, Massachusetts, where Ms. Nantume has been detained since May, 2018. Therefore, SMITH has legal custody of Ms. Nantume. SMITH is sued in her official capacity.

## FACTUAL ALLEGATIONS

15. Catherine Nantume's life or freedom would be threatened if she were removed from the United States. On June 25, 2018, undersigned counsel filed an emergency motion for stay of removal pending motion to reopen decision. Ms. Nantume is a lesbian from Uganda who fears persecution if returned to Uganda. (See attached, Exhibit 1, June 25, 2018 BIA Filing). As of time of filing, the Board of Immigration Appeals ("BIA") has not been acted on the motion or request for stay.

16. Ms. Nantume has lived in the United States since 2001 and she obtained lawful permanent residence on March 4, 2004.

17. Ms. Nantume is the single mother of a nine-year-old United States citizen child.

18. On December 3, 2012, Ms. Nantume was convicted of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 for knowingly and willfully conspiring to participate in a sham marriage when she married acquaintance, Timothy Danscak.

4

19. On May 12, 2014, the Immigration Judge ("IJ") found that Ms. Nantume was removable as charged under INA §§ 237(a)(2)(A)(i), 237(a)(1)(A), and 237(a)(1)(G)(ii). The IJ further ordered that the Respondent be removed to Uganda.

20. On July 30, 2014, Ms. Nantume filed a motion to reopen to apply for asylum, withholding of removal, and protection under the Convention Against Torture.

21. The Immigration Judge denied the motion to reopen on August 11, 2014.

22. On September 10, 2014, Ms. Nantume appealed the denial to the Board of Immigration Appeals.

23. ICE ERO planned to effectuate the removal order using an emergency travel document but on October 22, 2014, the Embassy of the Republic of Uganda ("the Embassy") cancelled said document.

24. On November 24, 2014, Ms. Nantume was released on an Order of Supervision ("OSUP") due to the inability to obtain a travel document.

25. The Board of Immigration Appeals dismissed her appeal on February 6, 2015. (See attached, Exhibit 2)

26. Ms. Nantume has been checking in at ICE ERO in Burlington, Massachusetts. She has complied with the terms of her OSUP and has never missed a check-in.

27. On May 31, 2018, ICE agents showed up Ms. Natume's house around 5:45 a.m. and arrested her while her daughter was sleeping. Ms. Nantume was processed at ICE ERO in Burlington, Massachusetts and hen brought to Suffolk County House of Correction in Boston, Massachusetts, where she is currently detained.

28. On May 31, 2018, Undersigned Counsel, Attorney Melanie Shapiro, contacted the Petitioner's ICE deportation officer. The officer informed Attorney Shapiro that Ms.

Nantume's file had not arrived at the office and he could provide no additional information.

29. On June 1, 2018, Attorney Shapiro emailed an official at the Embassy of Uganda to request information about whether or not the Embassy had issued a travel document for Ms. Nantume.

30. On June 5, 2018, Attorney Shapiro spoke on the phone to an Embassy official in Washington, District of Colombia, who confirmed that no travel documents were issued for Ms. Nantume.

31. On June 25, 2018, Petitioner sent a motion to reopen and emergency stay request to the BIA (See attached, Exhibit 1). On June 25, 2018, Attorney Shapiro advised the Embassy of Ms. Nantume's pending case and called ICE officials and requested Ms. Nantume's release. Attorney Shapiro also advised that if they did not release Ms. Nantume, this petition would be filed.

32. On June 26, 2018, Attorney Shapiro hand delivered a copy of the BIA filing to ERO in Burlington, MA, with a letter again requesting Ms. Nantume's release from detention referencing Calderon Jimenez v. Cronen, and failure to comply with 8 C.F.R. §241.4.

33. On June 27, 2018, Attorney Shapiro left a voice message for Ms. Nantume's assigned ERO officer, Timothy Baptiste requesting a response to the messages, copy of the BIA filing, and letter requesting Ms. Nantume's release.

34. A few hours later, ICE ERO faxed a copy of "Notice to Alien of File Custody Review" (hereinafter, "Notice") that was served on Ms. Nantume on June 12, 2018. (See attached, Exhibit 3) Officer William Chambers signed this document on June 12, 2018, attesting to serving Ms. Nantume. Under the "Method of Service," neither "Attorney of Record or

6

Designated Representative" nor "A-file" were marked off indicating that Attorney Shapiro was not contemporaneously served a copy of the notice nor was it put into Ms. Nantume's A-file or alien file

35. The Notice, served on June 12, 2018, indicates that the custody review is to take place "on or about: 08/29/2018." This means that Ms. Nantume, for whom ICE does not have a travel document and who did not violate her Order of Supervision, ICE plans to hold Ms. Nantume for approximately three months prior to conducting a custody review.

36. On June 28, 2018, Officer Timothy Baptiste called Attorney Shapiro while conducting the "initial informal interview." No notice was provided prior to this interview.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

37. In Zadvydas v. Davis, 533 U.S. 678 (2001), the U.S. Supreme Court held that six months is the presumptively reasonable period during which ICE may detain aliens in order to effectuate their removal. Id. at 702. In Clark v. Martinez, 543 U.S. 371 (2005), the Supreme Court held that its ruling Zadvydas applies equally to inadmissible aliens. Department of Homeland Security administrative regulations also recognizes that HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(b)(2)(ii). In Calderon Jimenez v. Cronen, Judge Wolf noted that "[t]he presumption created by Zadvydas, that up to six months of detention is reasonable, is based on the assumption that ICE followed the process prescribed by its regulations to ensure that continued detention was justified. No. 1:18-cv-10225-MLW at *9 (J. Wolf, June 11, 2018).

38. A federal statute, 8 U.S.C. § 1231(a)(2), requires that an alien ordered removed from the United States be detained for up to 90 days, ordinarily starting on the date the order

becomes final. This period time is referred to as the "removal period." Id. ICE must give the alien notice and an opportunity to be heard before detaining him or her beyond that period. See 8 C.F.R. §241.4. Regulations require that the alien and his or her attorney must be given notice of that custody review. See 8 C.F.R. §241.4(d)(3), (h)(2). ICE has a duty to obey these regulations, "even If they provide greater protection than is constitutionally required." Calderon Jimenez v. Cronen, No. 1:18-cv-10225-MLW (J. Wolf, June 11, 2018); see also Nelson v. INS,

39. ICE must release an alien detainee if there is no significant likelihood of removal in the reasonable foreseeable future. Zadyvydas, 533 U.S. at 701.

40. Here, ICE did not follow procedure. The Petitioner's revocation of release was unlawful because ICE did not have a travel document and it her removal was therefore not reasonably foreseeable when ICE has been unsuccessful in obtaining a travel document in the last four years.

41. The Due Process Clause of the Fifth Amendment protects an alien subject to a final order of deportation. See U.S. Const. Amend. V.; see also Zadyvydas, 533 U.S. at 690, 693-94.

**CLAIMS FOR RELIEF**
**COUNT ONE**
**STATUTORY VIOLATION**

42. Petitioner re-alleges and incorporates by reference paragraph 1 through 41 above.

43. Petitioner's detention by Respondents is unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court because it does not comport with the authority it cites 8 C.F.R. §241.13. Here, ICE did not provide notice of the "initial informal interview" to either Petitioner or Attorney; instead the officer called the Attorney as he was conducting the interview. Regulations state that upon revocation of release, the

procedures to be follows include that "[t]he Service will conduct an initial informal interview…to afford the alien an opportunity to respond to the reasons for revocations stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no signification likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(h)(4)(i)(2).

44. The statute provides that "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the [Secretary]." 8 U.S.C. §1231(1)(3). The Petitioner's removal period has long since passed. She was not detained from November 24, 2014, until May 31, 2018.

45. ICE is required to provide written notice to the alien and the alien's attorney about 30 days in advance if the alien is represented to provide the alien and their attorney the opportunity to submit information in writing to contest the grounds for revocation of release and challenge custody. 8 C.F.R. § 241.4(h)(2). No notice of the informal interview was provided to either the petitioner or Attorney Shapiro. Likewise, the notice of the file custody review was not provided to Attorney Shapiro until June 27, 2018, only after Attorney Shapiro requested release and alleged the detention is unlawful and ICE did not follow its regulations.

46. Petitioner may not be removed because he life or freedom would be threatened because of her membership in the particular social group, LGBT Ugandans. 8 U.S.C. §1231(b)(3)(A).

**COUNT TWO**
**SUBSTANTIVE DUE PROCESS VIOLATION**

47. Petitioner re-alleges and incorporates by reference paragraphs 1 through 46 above.

48. Petitioner's continued detention violates Petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint.

49. The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. See Reno v. Flores, 507 U.S. 292, 301-02. While Respondents would have an interest in detaining Petitioner in order to effectuate removal, that interest does not justify detaining Petitioner, who is not significantly likely to be removed in the reasonably foreseeable future. Zadvydas recognized that ICE may continue to detain aliens only for a period reasonably necessary to secure the alien's removal. As the Embassy of Uganda has not issued travel documents for the Petitioner and cancelled travel documents in the past, it is not significantly likely to occur in the reasonably foreseeable future, and there is no actual estimated timeframe to obtain travel documents. The Petitioner has not committed a crime since 2002, has ties to the community, and is not a flight risk, as she has complied with all conditions of her OSUP. There is no compelling governmental interest here to outweighs the Petitioner's liberty.

50. Once removal is not reasonably foreseeable, "continued detention is no longer authorized by statute" because the justification of "preventing flight risk—is weak or nonexistent where removal seems a remote possibility at best." Zadvydas at 690, 99. Judge Wolf stated in the case where ICE was not able to obtain travel documents but still detained aliens that "their immediate removal does not appear possible." Calderon Jimenez at * 59.

51. As Judge Wolf stated, while the immigration laws must be enforced, "the country also has a strong interest in not destroying families by deporting the wives, husbands, mothers, and fathers of United States citizens." Calderon Jimenez at * 3. Not only does the Petitioner face life imprisonment, mob justice, discrimination, and other harm if returned to Uganda, she faces potential separation from her family. The Petitioner's entire family is in the United States. As Judge Wolf in referencing detained aliens with removal orders emphasized, "[e]ach day with their families is, therefore, previous. Any unjustified loss of liberty for even one more day would be a particularly painful form of irreparable harm to them and to the United States citizens who love them." Id. at *59.

## COUNT THREE
## PROCEDURAL DUE PROCESS VIOLATION

52. Petitioner re-alleges and incorporates by reference paragraphs 1 through 51 above.

53. Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he or she should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning aliens' custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Petitioner violates Petitioner's right to procedural due process. 8 C.F.R. §241.13(h)(4)(i)(2).

## COUNT FOUR
## ARBITARY DETENTION IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

54. Petitioner re-alleges and incorporates by reference paragraphs 1 through 53 above.

55. "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406

U.S. 715, 738 (1972). The only sanctioned purposes for detaining noncitizens pursuant to INA 236(c)(1) are: (i) to ensure the appearance of noncitizens at future hearings; and (ii) to prevent danger to the community pending the completion of removal. <u>Demore v. Kim</u>, 538 U.S. 510, 532 (Kennedy, J., concurring).

56. In <u>Demore v. Kim</u>, Justice Kennedy wrote in a binding concurring opinion, <u>see</u> <u>Castaneda</u>, 769 F.3d at 39 & n.4, that "[w]ere there to be an unreasonable delay by [ICE] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." 528 U.S. at 532-33.

57. There is no constitutionally sanctioned purpose or justification for Ms. Nantume's detention. Ms. Nantume is not a danger to the community nor a flight risk.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner writ of habeas corpus directing the Respondents to immediately release Petitioner from custody;

3) Enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention of Petitioner;

4) Award petition Attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), <u>as amended</u>, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law;

5) Grant Petitioner a Bond Hearing; and

6) Grant any other and further relief that this court deems just and proper. I affirm, under penalty of perjury, that the foregoing is true and correct.

                                                     Respectfully Submitted,
                                                     Catherine Nantume,
                                                     By her attorney,

                                                   */s/ Melanie Shapiro*
                                                   Melanie Shapiro
                                                   619 High Street, Suite 102
                                                   Dedham, MA 02026
                                                   781-461-0100
                                                   BBO# 684288

Dated: June 28, 2018

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed by hand delivery on June 29, 2018, and a copy thereof will be sent electronically to the registered recipients as identified on the Notice of Electronic Filing.

                                                   /s/ Melanie Shapiro
                                                   Melanie Shapiro